UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK SELDOMRIDGE and ALISHA TORRES, Individually, and as the Natural Parents and Next Friend of L.S., a Minor,<br>      Plaintiffs<br><br>vs.<br><br>THE PENN STATE HERSHEY MEDICAL CENTER, *et al.,*<br>      Defendants**.** | :<br>:<br>:<br>: CIVIL NO. 13-CV-2897<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

*M E M O R A N D U M*

*I.*　　　*Introduction*

We are considering a motion to dismiss filed by the Penn State Hershey Medical Center ("PSHMC") Defendants.[1] (Doc. 8). This civil rights lawsuit was filed on November 19, 2013, by Plaintiffs Mark Seldomridge and Alisha Torres, against: Penn State Hershey Medical Center, six doctors employed at PSHMC, Lancaster County, and six individuals employed at the Lancaster County Children and Youth Services Agency ("CYS"). Plaintiffs allege that their constitutional rights were violated when their two-month-old child, L.S., was removed from their care for seven months as a result of a misdiagnosis of shaken baby syndrome. On January 31, 2014, the PSHMC Defendants

---

1. The PSHMC Defendants are: the Penn State Hershey Medical Center, Kathryn Crowell, M.D.; Andi Taroli, M.D.; Dorothy Rocourt, M.D.; Joel Weinstein, M.D.; Jonas Sheehan, M.D.; and Mark Dias, M.D.

filed a motion to dismiss for failure to state a claim. (Doc. 9). For the reasons that follow, we will grant the motion.

*II.        Background*

The following facts are set forth in Plaintiffs' complaint and are taken as true, as they must be when considering a motion to dismiss, Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009): L.S. was born in September 2011 to Plaintiff Alisha Torres. (Doc. 1, ¶ 20). Torres was administered oxytocin during labor to augment her contractions. (Doc. 1, ¶ 20). At birth, L.S. presented with a rare complication, known as "compound birth presentation," and Plaintiffs later learned that oxytocin should not be administered during births involving this complication. (Doc. 1, ¶ 23). Plaintiffs took L.S. to a pediatrician for three check-ups, and no evidence of abuse was ever noted. (Doc. 1, ¶¶ 26-28). On November 29, 2011, Plaintiffs took L.S. to a pediatrician because she was "sneezing, not eating, [and] vomiting." (Doc. 1, ¶ 29). The pediatrician diagnosed L.S. with being overfed. (Doc. 1, ¶ 29). A few days later, on December 2, Plaintiffs took L.S. to the pediatrician for her two-month-old check-up. This time, L.S. was "staring into space and less interactive." (Doc. 1, ¶ 30). Her head circumference, which had steadily measured in the 90th to 98th percentiles compared to other children her age, now measured well above the 98th percentile. (Doc. 1, ¶¶ 26, 28, 30). At the pediatrician's recommendation, Plaintiffs immediately took L.S. to the Ephrata Community Hospital, and a CT scan was performed. (Doc. 1, ¶ 32). The CT scan revealed subdural hematomas or hygromas, but no skull fractures. (Doc. 1, ¶ 32). Defendant Karen

2

Garber, an intake case worker at Lancaster County CYS, met with Plaintiffs and told them that if they would not agree to an "Immediate Preliminary Safety Plan," L.S. would be placed in foster care. (Doc. 1, ¶ 34). The safety plan, which designated Plaintiffs as alleged perpetrators of child abuse, provided that neither parent would have unsupervised contact with L.S. (Doc. 1, ¶¶ 34-35). Plaintiffs allege that they were afforded no opportunity to contest the safety plan. (Doc. 1, ¶ 36). Defendant Garber requested that Plaintiff Seldomridge submit to an interview with a police detective, but he declined. (Doc. 1, ¶ 38).

L.S. was then transferred to PSHMC, and at 9:07 p.m. on December 2, 2011, Defendant Jonas Sheehan, M.D., issued a neurosurgery report recommending an "NAI [non-accidental injury] w/u [work up]." (Doc. 1, ¶ 39). At 9:43 p.m., Defendant Dorothy Rocourt, M.D., issued a pediatric surgery report recommending a "Child Safety consult" and a skeletal survey. (Doc. 1, ¶ 41). Around 10:30 p.m., Defendant Kathryn Crowell, M.D., interviewed Plaintiffs as part of the Child Safety Team consultation, and subsequently issued a report that also recommended a skeletal survey. (Doc. 1, ¶¶ 43-44). On December 3, Defendant Joel Weinstein, M.D., observed retinal hemorrhages and retinoschisis in L.S.'s eyes, which he reported were "highly suggestive of repetitive shaking injury and would be extremely rare in any other setting." (Doc. 1, ¶ 51). A skeletal survey was performed on L.S., but no evidence of fractures were found. (Doc. 1,¶ 59). An MRI performed on L.S. revealed a bilateral subdural hematoma. (Doc. 1, ¶ 60). Defendant Andi Taroli, M.D., Director of the PSHMC Child Safety Team, was also

consulted.  She reported that L.S.'s injuries were consistent with shaking, but that Plaintiffs had denied shaking the baby.  (Doc. 1, ¶¶ 63-64).

On December 6, 2011, Defendant Mark Dias, M.D., surgically drained L.S.'s subdural fluids.  (Doc. 1, ¶ 71).  On December 9, Defendants Garber, Redcay, and Boyer again threatened to place L.S. in foster care if Plaintiffs would not agree to a "Placement Safety Plan."  (Doc. 1, ¶¶ 72-73).  That plan provided that Plaintiffs would have two hours of supervised contact with L.S. per day, but prohibited them from having ongoing contact with her.  (Doc. 1, ¶ 72).

On December 11, 2011, L.S. presented with new areas of subdural bleeding and a depressed fontanel, which, Plaintiffs allege, confirmed that her injuries were chronic in nature and not the result of shaking.  (Doc. 1, ¶ 76).  On December 13, 2011, L.S. was discharged but Plaintiffs were not permitted to take her home because the safety plan was still in place.  (Doc. 1, ¶¶ 78, 81).

Within 30 to 60 days of December 2, 2011, Defendants Garber, Redcay, Boyer, Hasselback, Murray, Huegel, Taroli, Crowell, Weinstein, and Dias participated in a Child Safety Team meeting concerning the abuse allegations against Plaintifffs.  (Doc. 1, ¶ 84).  On March 5, 2012, Plaintiffs were notified in writing that Defendants Garber and Redcay filed an administrative report listing them as perpetrators of abuse.  (Doc. 1, ¶ 85).  The notice contained information about how Plaintiffs could obtain administrative review of the report and request its expungement.  (Doc. 1, ¶ 86).  On March 21, 2012, Plaintiffs requested a hearing.  (Doc. 1, ¶ 87).

Meanwhile, the safety plan was extended on April 19, 2012, because Plaintiffs had not completed a required parenting program. (Doc. 1, ¶ 88). On July 12, 2012, L.S. was permitted to return home, subject to scheduled and unscheduled visits by Lancaster County CYS employees. (Doc. 1, ¶ 94). The safety plan was lifted entirely on September 12, 2012. (Doc.1, ¶ 96). Five months later, on January 14, 2013, the Pennsylvania Department of Public Welfare conducted a hearing to determine whether the report against Plaintiffs should be expunged. (Doc. 1, ¶ 110). After finding that a reasonable person would not have concluded that L.S.'s injuries were the result of abuse, the report was expunged. (Doc. 1, ¶¶ 113-116).

Pursuant to Pennsylvania law, doctors and other professionals who investigate and report child abuse are immune from civil suit. (Doc. 1, ¶ 106). None of the doctors that treated L.S. notified Plaintiffs that they were immune from civil liability. (Doc.1, ¶¶ 40, 42, 46, 49, 53, 70).

III.        *Discussion*

   *A. Standard of Review*

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint

need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, and a court is not "'bound to accept as true a legal conclusion couched as a factual allegation.'" Twombly, 550 U.S. at 555 (quoted case omitted).

In resolving a motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoted case omitted).

*B. State Action Doctrine*

In order to state a claim under Section 1983, Plaintiffs must allege that they were deprived of a constitutional right by someone acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Defendants argue that Plaintiffs' claims should be dismissed because PSHMC and its physicians are not state actors, and thus not liable

6

under 42 U.S.C. § 1983. The Third Circuit has announced three tests that can be used to determine whether an individual is a state actor:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the '[s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.'

Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009). This court has already held--in a case bearing a striking resemblance to the one before us--that PSHMC physicians who participate in child abuse investigations qualify as state actors under the third prong of Kach. See Billups v. Penn State Milton S. Hershey Med. Ctr., 910 F. Supp. 2d 745, 757 (M.D. Pa. 2012) (Kane, J.). The Billups court reasoned that these doctors "do not provide medical care to patients but, rather, 'conduct an investigation into, and render a conclusion about, whether suspected child abuse is, in fact, actual child abuse.'" Id. Defendants point out that a year prior to the Billups decision, a different district court came to the opposite conclusion, holding that a physician's involvement in a child abuse investigation does not constitute state action. See Dennis v. DeJong, 867 F. Supp. 2d 588, 647 (E.D. Pa. 2011). Because Billups is the more recent of the two decisions, and so factually similar to the case before us, we will follow the reasoning of that court. Here, Plaintiffs allege that Drs. Sheehan, Rocourt, Crowell, Weinstein, Taroli, and Dias examined L.S., conducted testing, and rendered opinions for the primary purpose of investigating suspected child abuse–not providing medical

treatment. (Doc. 1, ¶¶ 39-80). Based on these allegations, we find that the PSHMC Defendants qualify as state actors.

C.  *Claims Based on Defendants' Compliance with Pennsylvania's Child Protective Service Law ("CPSL")*

The complaint makes a slew of allegations against the PSHMC Defendants based upon their actions during the child abuse investigation. (Doc. 1, ¶ 120(VI-XIII)). For example, Plaintiffs bring claims against Defendants for "having a policy of initiating and requiring medical doctors to refer patients suspected [of] being abused to the PSHMC Child Safety Team for a child abuse investigation"; for "failing to notify Plaintiffs that PSHMC doctors who elect to participate in the child abuse investigation are immune from civil suit"; for "failing to believe the history from Plaintiffs that L.S. suffered no inflicted trauma"; and for "breaching [their] fiduciary duty to keep information confidential." (Doc. 1, ¶ 120(VI-XIII)). The complaint fails to specify how these actions violate federal statutory or constitutional law. For this reason, Defendants argue that Plaintiffs fail to state a claim on which relief can be granted.

Pennsylvania's CPSL requires a physician to report suspected child abuse when he/she "has reasonable cause to suspect, on the basis of medical, professional or other training and experience, that a child . . . is a victim of child abuse." 23 Pa. C.S.A. § 6311(a). Failure to report suspected abuse is a criminal offense. Id. § 6319. "Upon receipt of a report of suspected child abuse . . . the county agency shall immediately commence an investigation . . . ." Id. § 6368(b). The physician may order "a radiological examination and other medical tests[.]" Id. § 6314. The law also provides that "the

privileged communication between any professional person required to report and the patient or client of that person shall not apply to situations involving child abuse . . . ." Id. § 6311(b).  The CPSL does not require parental consent to initiate an investigation; nor does it require healthcare professionals to notify parents of their statutory immunity from suit.  Accordingly, because Defendants acted in compliance with Pennsylvania law, Plaintiffs cannot state a claim against PSHMC or its physicians for reporting suspected abuse, revealing confidential information, failing to obtain Plaintiffs' consent to the investigation, and acting outside the scope of medical treatment.  These claims will be dismissed with prejudice.

*D.        Due Process Claims*

Plaintiffs claim that Defendants violated their Fourteenth Amendment rights, but provide no further explanation.  (Doc. 1, ¶ 120).  For the purposes of this motion, Defendants assume that Plaintiffs are asserting substantive and procedural due process claims, and argue that both claims fail.  Plaintiffs' response only addresses the procedural due process claim.  Therefore, we will dismiss the substantive due process claim without prejudice, and consider the procedural due process claim.

Plaintiffs argue that their right to procedural due process was violated when they were coerced into agreeing to a safety plan that removed L.S. from their care.  We agree with the PSHMC Defendants that, according to the complaint, only the

Lancaster County Defendants[2] were involved in the implementation of the safety plans. The complaint states that, "[f]or over 9 months . . . Defendants Garber, Redcay, Hasselback, Murray, Boyer, Huegel and Lancaster County failed to provide Plaintiffs with any due process regarding any safety plan . . . ." (Doc. 1, ¶ 98).  The PSHMC Defendants are not mentioned in these allegations.  Therefore, this claim cannot stand.

Plaintiffs also allege that they were deprived of due process during their interview with Defendant Crowell, which was part of the child abuse investigation. Plaintiffs articulate a lengthy and far-fetched argument that this encounter was a "custodial interrogation" (Doc. 19 at 17), and therefore, they were entitled to procedural protections similar to those described by the Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966).  Specifically, Plaintiffs claim that they were entitled to: a right to counsel; a right to remain silent; a right to know that the PSHMC physicians were revealing confidential information; a right to know that the investigation was ongoing; a right to know that the PSHMC physicians were immune from civil suit; and a right to know they could obtain a second opinion.  (Doc. 19 at 19-20).

First, the complaint does not allege that law enforcement was present during Plaintiffs' interview with Defendant Crowell on December 2, 2011.  (Doc. 1, ¶ 43). Because Dr. Crowell was involved as a physician during the events at issue, her meeting with Plaintiffs could not have been a custodial interrogation.  Although Plaintiffs' brief

---

2. The Lancaster County Defendants are: Lancaster County, Karen Garber, Amber Redcay, Sarah Hasselback, Susan Murray, Emily Heugel, and Robin Boyer.

claims that law enforcement was involved, we are bound to the allegations in the complaint.³  Second, while courts have held that some procedural due process must be afforded to parents faced with the implementation of a safety plan (see, e.g., Starkey v. York Cnty., No. 11-cv-981, 2012 WL 9509712, *10-11 (M.D. Pa. Dec. 20, 2012) (Jones, J.)), Plaintiffs fail to cite any legal precedent supporting the proposition that they are entitled to protections such as those described *supra*.  Last, we have already explained that the PSHMC Defendants were not involved in the imposition of the safety plan, and thus, were in no position to offer procedural protections.  For these reasons, we will dismiss the procedural due process claim with prejudice.

E.         *Miscellaneous Constitutional Claims*

Plaintiffs allege a host of miscellaneous state and federal constitutional claims that Defendants move to dismiss.  Plaintiffs attempt to bring a claim pursuant to Article I of the Pennsylvania Constitution.  (Doc. 1, ¶ 121).  Defendants correctly assert that this claim fails because Pennsylvania does not recognize actions for money damages for violations of the state constitution.  (Doc. 14 at 16).  See Colvin v. Mikolic, No. 4:10-cv-1820, 2011 WL 1329188, at *6 n.3 (M.D. Pa. Apr. 5, 2011) (citing R.H.S. v.

---

3. In fact, the complaint alleges that Plaintiff Seldomridge freely declined to speak with a police officer when Defendant Garber asked him to submit to an interview on December 2. (Doc. 1, ¶ 38).

11

Allegheny Cnty. Dept. of Human Servs., 936 A.2d 1218, 1226 (Pa. Commw. Ct. 2007)). This claim will be dismissed.[4]

Plaintiffs also bring a claim pursuant to 42 U.S.C. § 1981. (Doc. 1, ¶ 121). To state a claim under Section 1981, a plaintiff must allege "(1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute . . . ." Brown v. Phillip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001). Plaintiffs have failed to allege any facts concerning the race of any party to this lawsuit, and admit that they are not able to meet the pleading standard for this claim. (Doc. 19 at 25 n.6). Therefore, we will dismiss this claim without prejudice to Plaintiff filing an amended complaint alleging facts that support a claim of racial animus.

Plaintiffs allege that Defendants violated their First Amendment rights, but fail to specify which right was allegedly violated. (Doc. 1, ¶ 121). Because Plaintiffs make no further allegations to support this claim, it cannot stand.

The complaint also contains Fourth, Fifth, Sixth, and Seventh Amendment claims. (Doc. 1, ¶ 120). Defendants argue that these claims must be dismissed because Plaintiffs were never criminally prosecuted, and therefore, Plaintiffs' right to be free from unreasonable searches, right against self incrimination, right to counsel, and right to a jury trial were never triggered. Plaintiffs fail to respond to this argument.

---

4. Because amendment would be futile, this claim will be dismissed with prejudice. See Grayson v. Mayview State Hosp., 293 F.3d 103 (3d Cir. 2002) (allowing courts to deny leave to amend if such an amendment would be futile).

Because Plaintiffs admit in the complaint that no criminal charges were filed against them (Doc 1, ¶ 96), these claims are baseless, and they will be dismissed.[5]

Additionally, Plaintiffs allege a claim for conspiracy under 42 U.S.C. § 1985. To properly state such a claim, Plaintiffs must show that "two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" Luck v. Mount Airy No. 1, LLC, 901 F. Supp. 2d 547, 559 (M.D. Pa. 2012) (Munley, J.) (citing Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993)). "A plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the alleged chain of events." Marchese v. Umstead, 110 F. Supp. 2d 361, 371 (E.D Pa. 2000). This claim also fails. The complaint does not allege that Defendants agreed to act in concert for the purpose of depriving Plaintiffs of their constitutional rights. Accepting all of the pleaded facts as true, it is clear that Defendants acted for the lawful purpose of investigating a case of suspected child abuse. Although Plaintiffs contend that the establishment of a Child Safety Team at PHSMC is "a conspiracy mandated by Pennsylvania law," this is a public policy argument that does nothing to substantiate the claim at hand. Plaintiffs have failed to state a plausible claim for conspiracy, and it will be dismissed.[6]

---

5. These claims will also be dismissed with prejudice because amendment would be futile. See Grayson, *supra* note 3.

6. This claim will be dismissed with prejudice because amendment would be futile. See Grayson, *supra* note 3.

F.        *Punitive Damages*

Because all of Plaintiffs' claims against the PSHMC Defendants will be dismissed, we will also dismiss the claim for punitive damages.

III.       *Conclusion*

For the reasons above, the motion to dismiss will be granted. An appropriate order follows.

>                                /s/William W. Caldwell
>                                William W. Caldwell
>                                United States District Judge